Good morning. May it please the Court, Angela Kruger, Federal Defenders of San Diego, on behalf of Ms. Peyton. When Judge Brewster resentenced Ms. Peyton, he imposed a judicially vindictive sentence because he made, without explanation, contrary factual findings that he, well, findings that were contrary to his findings at the original sentencing hearing. Most significantly, he, at the first sentencing hearing, he found that there was no willful obstruction of justice on Ms. Peyton's part. He found that it was, that any action in her defense counsel submitting a declaration prepared by her co-defendant, one step removed from the willful obstruction of justice that would be required to justify that enhancement. Mr. Peter. Yes. I wasn't able to tell from the record. When did Judge Whalen look at the videotapes of the passing of the fraudulent credit cards? Was that at the second sentencing or the first? No, it was before the first hearing before trial. And actually, I do want to point out something about that. The Court implied in making its ruling both at the first sentencing hearing and the second sentencing hearing that the video showed a transaction. And if you look at Record of Excerpt 64, the government concedes that the videotape showed no transaction the way that the judge had thought it did. In fact, it had just showed that she was present for, it wasn't, I think she was picking up something or something. But there was no, I think so. It's not clear, except that it does say that there was no transaction, and that's conceded by the government. And when did he view that? Was that during the trial? It was before the trial of September. Before the trial? Yes, in 2000. Okay. Because he would have seen all of that at the time of the first sentence. Exactly. Everything that was presented to the judge at the time of the first sentencing remained the same at the time of the second sentencing. And that's really where the fundamental error comes from in this case. Okay. Because neither the law nor the facts change between the first and the second sentencing hearing. So I realize you're early in your argument, but have you abandoned then the argument that because it was a general remand, he was permitted to recompute the value of the loss based on relevant conduct? Well, no, this is, there was a general remand. But I do believe that there was some obligation on the part of the judge to stick to his original factual findings. If the law had changed or new factual evidence had been presented, it was legitimate. But the general remand, isn't he entitled, particularly where the government had cross-appealed the first sentencing, on the calculation of the amount of the loss, isn't he entitled to go back and, in essence, wipe the slate clean and do it all over again with regard to relevant conduct? I don't believe so. And here's why. Because when a person appeals their sentence or appeals their conviction, there has to be certain expectations that there won't be arbitrary, an arbitrary change in the factual findings. So the problem here is the judge didn't explain why the facts were true at the first sentencing hearing, but suddenly changed at the time of the second sentencing hearing. Can you explain the reference, his confusion with regards to Apprendi? I mean, we were all confused when the Supreme Court decided Apprendi as to how it should apply to the calculation of relevant conduct for sentencing purposes. But clearly there had been a change in the law between the first and second sentencing and clarification by this court and others as to the limitations on the reach of Apprendi. And, again, in the face of a general remand, what's wrong with having the judge basically start all over, now understanding that the jury doesn't have to make a finding as to the total amount of the loss, that he can do it? I would agree with you if that was his sole basis for making the ruling or making the factual findings as the amount of loss at the first sentencing hearing. But it wasn't. Significantly, at ER 122, he says, Look, Mr. Prosecutor, even if you're correct on the application of Apprendi, I feel really uncomfortable enhancing her based upon the amount of loss that you're considering. Well, it's not an enhancement. Well, an adjustment. It's an actual calculation of one of the factors that go into the final offense. Right. But what I mean by that is he only wanted to find the amount of loss based upon the jury's findings, in part based upon the government's failure to explain where the $7,000 came from. And that has not been cleared up between the time of the first sentencing hearing and the second sentencing hearing. Okay. I think I understand your argument then. So even though the Apprendi issue had been resolved, you have a fallback position, which is, you know, he was uncomfortable from the beginning. Right. With the uncharged. My position is that the judge essentially told the prosecutor, look, assuming your argument is true and I could enhance her based upon the total amount of loss of $67,000, you haven't told me where that amount comes from and how that would actually be relevant conduct as to her. And so. I mean, that's laid out in the sentencing report, isn't it? Actually, it's not. If you look at all the amounts that are calculated in the sentencing report, one, it only equals $37,000. Okay. But then they talk to American Express and American Express says the amount is $67,000 and change. And then there's this other problem, too, because it's clear from the pre-sentence report that there are additional credit cards included in the total amount of loss, all of which had been presented to the judge or the theory had been presented to the judge at the time of the first sentencing hearing. So the judge knew that there were the three credit cards charged in the indictment. There were five additional credit cards relating to postal employees. And then there's three additional cards that I have no idea. And it's not clear at all from the record where they come from. And you could find that at the government's in government's trial memorandum at pages three or seven through nine of the ER. So there are three additional credit cards with total about 9000, where the amount, it's not clear how Ms. Payton, if at all, is involved in that as relevant conduct. It's also not clear that she is involved in any sort of scheme involving naval employees. Okay. I think you've shifted gears on me. Are you now challenging the sufficiency of the evidence based on the standard that the district court applied? Because he clearly accepted the $67,000 figure on the record as the driver for the increase in the base offense level, did he not? He accepted that as the total amount of loss at the first and the second sentencing hearing. The problem at both the first and the second sentencing hearing was the calculation of relevant conduct. Ms. Payton is not responsible for, she's responsible only for those amount of loss, which is foreseeable to her as part of her agreement to participate in a particular scheme. But he obviously found that she was based on the fact that he used the $67,000 number to increase by four, correct? Oh, that's the problem at the second sentencing hearing. The thing is that at the first sentencing hearing, he did not find that to be true. And that's why. I understand that. But I don't know why you and I are having such a hard time communicating on this. He was confused as I understood it the first time around based on Apprendi. In part. Okay. The second time around, he was told, we're sending it back for a general remand. Don't worry about Apprendi. That's now off the table. Recompute it. And he does. And he comes up with a $67,000 figure. So, and he explains that the reason he did that is because he was confused on Apprendi. Now that's off the board. Why isn't that sufficient under the Supreme Court authority to provide a reason to rebut the presumption of vindictiveness that you're urging us to find? Because I think that that is based upon that my belief that it is a factual finding. He found based upon, my belief is that he found based upon a preponderance of the evidence that the total amount of loss that could be considered against Ms. Payton as relevant conduct was only $18,000, even assuming the government's fairness. So you are, you're arguing then that he didn't apply the correct burden of proof. There are two things. There's the burden of proof issue if you decide that he wasn't judicially vindictive. But I'm also saying that he was, nevertheless, judicially vindictive because his factual finding at the first sentencing hearing was based in part on the belief that, okay, even under the preponderance of the evidence standard, I'm finding that you haven't met your burden of proving Ms. Payton's relevant conduct. And that's, I do believe. All right. Okay. Thank you. You want to save the? The remaining for rebuttal. You got it. Okay. Mr. Miller. May it please the court, Steve Miller for the United States. In this case, there were no sentencing errors and the sentence was not the product of any violation of due process because it was not vindictive. And it was not vindictive because the higher sentence. I think the hardest one for the government. Yes. Which is, how can you explain that the first time around he decided she'd not abused her position of trust, but now the second time around she has? That's actually reversed, Steve. Reversed what? Obstruction of justice. No, no, no. I thought it was. He did not impose the obstruction of justice on the first sentence. Right. He did impose the obstruction. Did he impose abuse of trust on both? Yes. Oh, okay. Then I'm sorry. That's the obstruction of justice. Yes. The problem there was that there was a misapplication of the interpretation of the law on all of the issues. There are three misinterpretations of the law. You know, application of relevant conduct, the grouping of the losses with concurrent sentences, and the finding that the letter, the declaration that she tried to offer a trial would not qualify as obstruction of justice because it was from some third party. This was the co-defendant, Mr. Lucas? Correct. And it was essentially an exculpatory statement saying my girlfriend had nothing to do with my family? Yes. Now, I think that, I don't believe that the court clearly erred in finding that that qualified as obstruction of justice. The basis of his denying it before is at ACR 178 to 184. And the basis of his decision not to impose the obstruction of justice then was he thought, and I think erroneously so, that because it was a third party, because she didn't make the statement, then she couldn't be liable for what he says. And since the second sentencing, or actually the third sentencing, because we had one in the morning, one in the afternoon, and then one after remand, the final sentencing, he, I think, properly applied the standards under the guidelines that if you attempt to proffer false evidence, that that would justify the obstruction. And if you look at ECR 121, that's the declaration in and of itself. And 120 is the letter that she submitted to the employment board of the post office to say, I am charged with this credit card fraud, and I'm going to be acquitted because my boyfriend, I believe, I forget if she said it was a co-defendant, now says I was exonerated. Now, in this case, the declaration was not the type of statement, gee, I didn't know that these cards were unauthorized. It was a complete denial of the act. The actus reus. It was. Well, Mr. Miller, I wish we could get back to the presumption, because that's your problem. The presumption of vindictiveness? Yeah. We start with North Carolina against Pearl. Correct. Now. It says there is a presumption of vindictiveness that the judge, unless the judge affirmatively indicates the reason for raising the sentence. Okay. Then we have Wassman, which says here petitioner received a greater sentence of confinement following retrial than he had originally received. This was sufficient to engage the presumption of Pierce. So what did Judge Brewster do differently to rebut that? It's a judicial presumption. I know he's a very kind, amiable judge, but in fact, he's traditionally vindictive unless he did something. No. Actually, I disagree that there is a presumption, because what is ignored by counsel is that this was a general remand. And that there is. That doesn't make any difference at all. Oh, yes, it does. Because if the sentence is a matter of correcting the sentence on remand, even though it may result in a higher sentence, there is no presumption. And that's the. Where do you have that? Where do the Supreme Court decide that? Well, we have the case Garcia-Guzier. That was the case where a defendant was sentenced to about, I think, 130-something months based upon the weight of methamphetamine. And then on remand, he was resentenced to about 168 months. That was a higher sentence, but there was no presumption because that sentence was based upon the purity of methamphetamine. Well, you can find facts. I mean, obviously, you can change. But what did Judge ‑‑ maybe you can point out, what did Judge Brewster find differently on the second sentencing? See, I dispute the characterization that Judge Brewster found that there was no $67,000. If you looked at how he approached the first sentencing, it was not that we didn't prove it. It was that he wasn't going to review all that because he was all set in his decision that I'm going to add up the amounts that were charged in the indictment and call it a day. Counsel, where did Judge Brewster acknowledge that he had committed an error? That would have been ECR 306. That's when he adopts the relevant conduct application. Did he say he had erroneously ruled on that in the prior sentencing? Well, he didn't say I erred then. It was essentially, now, since then, there have been other cases that show me that apprendi should not apply and that my belief, that relevant conduct under the guidelines must be proved beyond a reasonable doubt by the jury. You just read the language there. Now, from 305, reviewing the totality of the circumstances and reviewing the briefs that have been filed by counsel in hearing, the oral presentations by counsel this morning.  And does that five level drive the sentence up? Yes. And actually it drives it up three additional levels from the original sentencing. And one of the cases. Is that the total upping of the sentence? Yes. In addition to the obstruction of justice and the abusive position of trust. Are there other findings of the difference? No. There's just a four level difference, right? Correct. Two from relevant conduct and two from obstruction of justice. Yes. Yes. And one of the cases that came out between the time of the 15 month sentence and the 30 month sentence was the Gammas case. And that was actually so new, I had to have the blank at third sight. That was the case where a defendant was charged with attempted first degree murder and marijuana trafficking. And he was acquitted on the murder and convicted him on the drug charges. And the court affirmed the application of the murder guidelines, even though there's a factual finding that Mr. Gammas was not the person who did the act, the shooter. He was not the shooter. And that was one of the cases that had come out since then. Let me ask you this, where did the court acknowledge that it had made an error in the obstruction of justice enhancement? I don't believe that it did. I think it just said that because since it was, I think he did not acknowledge the fact that he had made an error. But if you look at the different findings from the first sentencing and the second sentencing, I don't believe that the court clearly erred in finding that it. But how does that rebut the presumption if he didn't apply the obstruction the first time, and the enhancement the first time, and he applied it the second time without any explanation? Why is, how is the presumption of vindictiveness rebutted then? Well, I think that there need not be an explanation to rebut any presumption. And I think that is whether or not the reasoning or the court's decision clearly erred. I thought that's what North Carolina versus Pierce said, that there has to be some explanation by the judge to counter the presumption if there is a change. And there is none in this record, Your Honor. Well, you understand the problem. Oh, yes, I understand. I think the sentence will be doubled as a result of it. It's a crazy world. And I'm sort of sorry the government is so pressed to maintain its position. Well, we were pressed to maintain this position after the original sentencing. The sentence has always been in dispute. And the original sentence reflected the culpability of one... Well, you could have used a little sense and said, Well, you only got so much the first time. We're not going to ask for more. I understand. You wanted to win all the way. That's sometimes a big mistake. Well, it's not because I want to win all the way. It's because I think that the facts and the law justified it. There is one point... You've got this nice judge who's been there a long time, defending himself against the presumption of vindictiveness. All right. There is one point that I would like to call to the Court's attention. You asked about the videotapes. There were actually two videotapes. One was of the defendant picking up the stereo equipment. That was offered at trial, as was many of the records for the other additional losses. That was offered at trial. There was another videotape, and that was a videotape of the defendant and the co-defendant in Nordstrom's purchasing the gift cards that were used in the Griffin. That was done prior to the jury selection in the motion that eliminates. So the Court did review that. I wanted to clarify, but it's two different. Okay. Thank you, Mr. Newman. Ms. Gruber, you've got about a minute left. The bottom line is that the second sentencing hearing cannot be viewed in a vacuum in light of the judge's original factual findings after trial and at the first sentencing hearing. The fact that this Court issued a general remand does not give the district court carte blanche to arbitrarily change the factual findings that it made. It invites the government, the parties, to present additional factual evidence to support a change in the facts or to present legal argument in support of the change in the law. Isn't the law, the general remand gives him the right to look at everything anew, but if he's going to depart from the sentence that he imposed, he simply has to, the first time, he simply has to affirmatively explain why on the record. I would agree that that would be true. He would have to explain, and he did, as the judge Keefe did in Garcia-Guzar. She explained, I made a mistake the first time. Judge Brewster would have been obligated to say, look, I know I made a factual or I did say the factual findings that I wasn't comfortable with the evidence presented the first time, but this time, suddenly I am. But how about the change in the law? If he thought under Apprendi that there had to be a different level of proof and then under Apprendi he was disabused of that notion, then why isn't that sufficient justification for changing the relevant conduct calculation? Because I do think that there was two independent bases for him making his findings the first time, one of which was he said, assuming arguender. But why isn't the articulation of one factor sufficient? Because I think that he made a factual finding that even if, essentially saying, look, even if you're right and I'm wrong, the calculation of loss should only be $18,000 based upon the evidence that I see now. Okay. But then doesn't a general remand take care of that problem? Because he's not bound by the factual findings that he made the first time around. He can give a higher sentence. And that is a risk that the defendant takes when he takes an appeal, particularly where the government cross-appeals on issues that may affect the length of the sentence. I think that would be true if there was an additional change in the facts in the law. I just don't think that a judge is entitled under Pierce to make an arbitrary change in his factual findings. Thank you. Thank you very much, counsel. The case just argued is submitted.
judges: Noonan, Tallman, Rawlinson